IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| COMPASS POINT CONDOMINIUM OWNERS' ASSOCIATION, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )   CIVIL ACTION NO. 22-00257-JB-C<br>) |
| LANDMARK AMERICAN INSURANCE COMPANY, | )<br>)<br>) |
| Defendant. | ) |

## ORDER

This matter is before the Court on Plaintiff Compass Point Condominium Owners' Associations, Inc.'s ("Compass Point") Motion to Exclude Sam Keske (Doc. 52) and Motion to Exclude Rob Senecal (Doc. 53), Defendant Landmark American Insurance Company's ("Landmark") respective responses (Docs. 86 and 87), and Compass Point's replies (Docs. 110 and 111).[1]  Additionally, before this Court is Compass Point's Motion to Strike Paragraphs 7 and 9 of the Affidavit testimony of Sam Keske (Doc. 109) and Landmark's response (Doc. 117).  A hearing was held on November 13, 2023, and the Court has reviewed the motions, supporting briefs, and the various exhibits filed in support of the motions.  For the reasons discussed below, the motions are **DENIED**.

---

[1] Compass Point and Landmark have both disclosed numerous experts and have filed several cross motions to exclude certain of those experts.  In this Order, the Court will address only motions to exclude filed by Compass Point.

I.  **Background**

This action stems from a dispute over insurance as a result of Hurricane Sally, which made landfall in Gulf Shores, Alabama on September 16, 2020, damaging the Compass Point Condominium (the "Condo"). (Doc. 52). Following Hurricane Sally, Plaintiff submitted notice to Defendant of its claim for damages after which both parties hired parties to investigate the cause and extent of the damage to the Condo. (*Id*.). Relevant to the instant motions, Landmark retained Sam Keke and Rob Senecal to investigate the cause and extent of the damages at the Condo and Compass Point now seeks exclusion of their respective expert testimony.[2]

II.  **Relevant Law**

The United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993) found that scientific expert testimony is admissible only if the proffered testimony is both relevant and reliable. "[A] district court judge is to act as a 'gatekeeper' for expert testimony, only admitting such testimony after receiving satisfactory evidence of its reliability." *Dhillon v. Crown Controls Corporation*, 269 F.3d 865, 869 (7th Cir. 2001); *see also U.S. v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999). However, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Technology DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). "[A] district court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury." *Id*. (citing *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). "Quite the contrary, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the

---

[2] The Court has considered each motion and the respective evidence in full and has attempted to set forth its findings as concisely as possible. However, with respect to each finding herein, the Court has also determined exclusion is or is not necessary for the reasons more exhaustively articulated in the prevailing party's brief.

2

burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id*. (quoting *Daubert,* 509 U.S. at 596, 113 S.Ct. at 2798).

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The rule compels district courts to "conduct an exacting analysis of the foundations of the expert opinions to ensure they meet the standards for admissibility under Rule 702." *United States v. Abreu*, 406 F.3d 1304, 1306 (11th Cir. 2005) (quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (internal quotation marks omitted)). Accordingly, under Rule 702, "this Court has an obligation to screen expert testimony to ensure it stems from a reliable methodology, sufficient factual basis, and reliable application of the methodology to the facts." *Whatley v. Merit Distribution Services*, 166 F.Supp.2d 1350, 1353 (S.D. Ala. 2001) (citations omitted).

The Eleventh Circuit requires district courts to engage in a "rigorous three-part inquiry" for assessing the admissibility of expert testimony under Rule 702:

Trial courts must consider whether: "(1) [T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of

3

fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1999)). These requirements are known as the "qualifications," "reliability," and "helpfulness" prongs. *See id*. "[T]he proponent of the testimony does not have the burden of proving that it is scientifically correct," but must establish "by a preponderance of the evidence, it is reliable." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)); *see also Whatley*, 166 F.Supp.2d at 1354 ("the proponent of the expert testimony has the burden to establish by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied.")(citations omitted). Factors that may be relevant include:

> (1) whether the theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) in the case of a particular ... technique, the known or potential rate of error, and (4) whether the theory or technique is generally accepted by the relevant ... community.

*Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (internal quotation marks and alterations omitted). Additional factors that may be taken into account by a district court include:

> (1) Whether the expert is proposing to testify about matters growing naturally and directly out of research he has conducted independent of the litigation, or whether he has developed his opinion expressly for purposes of testifying;
>
> (2) Whether the expert has unjustifiably extrapolated from an accepted to an unfounded conclusion;
>
> (3) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting;

(4) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Fed. R. Evid. 702 advisory committee's note to 2000 amendments (internal citations omitted).

"To fulfill its gatekeeping function under Rule 702, a district court must not simply tak[e] the expert's word for it." *Edwards v. Shanley*, Edwards v. Shanley, 580 F. App'x 816, 823 (11th Cir. 2014) (citation and internal quotations omitted). "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *Id*. (quoting *Frazier*, 387 F.3d at 1261). For the "helpfulness" prong, the court considers whether the expert testimony concerns matters that are beyond the understanding of the average layperson. *See United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) (expert testimony admissible if it offers something "beyond the understanding and experience of the average citizen"). Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. *Frazier*, 387 F.3d at 1262-63. Additionally, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. An expert may testify as to his opinion on an ultimate issue of fact. *United States v. Delatorre*, 308 Fed. Appx. 380, 383 (11th Cir. 2009).

### III. Discussion

#### A. Sam Keske

Landmark retained Sam Keske ("Keske"), an engineer with Wiss, Janney, Elstner Associates, Inc. ("WJE") to "perform a damage assessment of the exterior windows, doors, and skylights". (Docs. 52 and 52-C). Keske has been designated to testify, among other things, as to wind speed and pressure generated by Hurricane Sally. More specifically, he has opined that the

windows and doors of the Condo "were unlikely to have experienced wind-pressure damage from Hurricane Sally." (Doc. 52-3 at 17).

Compass Point seeks exclusion of Keske pursuant to Rule 702 because (1) he is unqualified, (2) his methodology is unreliable, and (3) his opinion will not assist the trier of fact. (Doc. 52 at 9). Landmark disputes each of these grounds. (Doc. 86, generally).

The Courts finds that Keske is qualified as an expert. The record reflects that Keske holds a bachelor's, master's, and Ph.D. in civil engineering. (Doc. 86). He is licensed in eight states and has worked for WJE for the past nine years. Although Compass Point asserts that Keske lacks sufficient experience specifically dealing with fenestration systems, Landmark has highlighted Keske's experience dealing with condominium properties following hurricane events and points out that Keske has been the lead engineer investigating fenestration systems prior to his involvement in this litigation. The qualification standard for expert testimony is "not stringent," and "so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Kilpatrick v. Breg, Inc.*, 2009 WL 2058384, at *3 (S.D. Fla. June 25, 2009) (quoting *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 585 (N.D. Fla. 2009)). After a review of the relevant supporting evidence, the Court is satisfied that Keske is qualified to testify in this action.

The Court additionally finds that Keske's opinions are not subject to exclusion for unreliability. In reaching his wind speed conclusions, Keske calculated the wind load on Compass Point using winds speeds recorded at six different weather locations within a 12-mile radius of Compass Point. Compass Point argues that Keske's methodology for determining wind speeds and pressure deviates from standard practices and in based on "incorrect code data" and

therefore, his resulting opinions are unreliable. Compass Point additionally asserts that Keske utilized the incorrect building code to determine fenestration wind loads. Because Compass Point contests the data used by Keske in his calculations, the Court finds that these objections to be akin to a position that the results are incorrect because the methodology was flawed. As such, these objections go to the weight and credibility of Keske's opinions, not their admissibility. *See Quiet Technology,* 326 F. 3d at 1345-46. ("Indeed, 'in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility.'") (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002)). Accordingly, the alleged shortcomings can be adequately addressed on cross examination. *See Daubert*, 509 U.S. at 596, 113 S.Ct. at 2786 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Additionally, Compass Point seeks the exclusion of Keske's testimony on the ground that it will not assist the trier of fact. This position, however, is based in large part, on Compass Point's argument that Keske's opinions will be unhelpful because that are unreliable as discussed above. Because this Court is not persuaded by Compass Point's reliability position, it is similarly unconvinced that the same renders Keske's testimony unhelpful. Moreover, Keske's testimony is beyond the understanding of the average lay person and will assist the trier of fact in this action. *See Frazier*, 387 F.3d at 1262-63. As such, exclusion is not warranted.

Finally, Compass Point argues Keske's opinion should be excluded because it is hearsay and only echoes the findings and conclusions of his co-workers. This Court has reviewed the relevant opinions, deposition testimony, and exhibits, and is satisfied that Keske's opinion is not

a mere parroting of another expert. Rather, the record reflects Keske conducted his own investigation and consulted with his colleagues in the normal course of business. As such, this Court is not convinced that Keske is merely a conduit of hearsay and exclusion is not necessary.[3]

### B. Rob Senecal

Rob Senecal is a building consultant for Young and Associates ("Y&A") and has been disclosed to provide expert testimony as to the reasonable and necessary costs for repairing the damage to the Condo. Y&A was hired by Landmark post-Hurricane Sally to inspect and provide a global repair estimate of damages caused to the Condo. (Doc. 53 at 3-4). Y&A's team initially included Thomas Lane, Michael Senecal, and Greg Heighes. (*Id*.). Later, in October 2020, Rob Senecal ("Senecal") was added. (Doc. 87 at 4). Y&A first inspected Compass Point in September 2020. According to Compass Point, this original inspection formed the basis of the ultimate Y&A estimate that was produced as part of Senecal's expert disclosure. (Doc. 53 at 3).

Compass Point seeks exclusion of Senecal pursuant to Rule 702 because (1) he cannot recall details of the estimate because he did not prepare it, (2) he ignored his own cost assessment methodology contained with the Xactimate user manual, and (3) his opinions are unreliable and will not assist the trier of fact. (Doc. 53). Compass Point additionally seeks exclusion of Senecal pursuant to Rule 703 as hearsay. (*Id*.). Landmark disputes each of these grounds. (Doc. 87, generally).

The Court is not persuaded that Senecal's testimony is due to be excluded pursuant to Rule 703 as hearsay testimony. The expert report disclosed by Senecal is not the same report

---

[3] Because the Court has determined that Keske's opinions need not be excluded without consideration of the affidavit submitted by Keske (Doc. 86-3), for the reasons stated above, Compass Point's Motion to Strike (Doc. 109) is MOOT.

which Compass Point repeatedly points out was not prepared by Senecal.  Rather, an initial report was prepared by other Y&A consultants followed by nine more reports, and then ultimately the report which disclosed, which was in fact prepared by Senecal.  While the Court appreciates Compass Point's position that the ultimate report was based- in large part-on a previous report, it is not persuaded that Senecal should be prevented from testifying because his report also included estimates from previous reports.  Rather, in this instance it is evident that Senecal personally oversaw the project beginning in October 2020 which required his actual involvement in the mitigation and rebuild efforts and he personally drafted the report submitted with his expert disclosures.

      The Court is additionally not persuaded that Senecal's testimony should be excluded under Rule 702.  The estimate disclosed by Senecal was prepared using a software application known as Xactimate.  Although Compass Point acknowledges that Xactimate has been accepted by courts as a reliable method of construction cost valuation, it attempts to distinguish its use in this action based on Senecal's failure to seek out independent costs estimates and/or verify the amounts by the insured per the Xactimate user agreement/manual.  (Doc. 53 at 13-15).  The Court finds these objections more akin to the weight of Senecal's testimony than its admissibility.  *See Quiet Technology*, 326 F. 3d at 1345-46.  Accordingly, the alleged shortcomings can be adequately addressed on cross examination.  *See Daubert*, 509 U.S. at 596, 113 S.Ct. at 2786 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  Finally, the Court is not persuaded that exclusion of Senecal's testimony is warranted on the ground that it will not assist the trier of fact.  Similar to above, this position is

based, in large part, on Compass Point's argument that Senecal's opinions are unreliable. Again, because this Court is not persuaded by Compass Point's reliability position, it is similarly unconvinced that the same renders Senecal's testimony unhelpful. Moreover, Senecal's testimony is beyond the understanding of the average lay person and will assist the trier of fact in this action. As such, exclusion is not warranted. *See Frazier*, 387 F.3d at 1262-63. As such, exclusion is not warranted.

## IV. Conclusion

For the reasons stated above, Compass Point's Motions to exclude (Docs. 52 and 53) are DENIED and Compass Point's Motion to Strike (Doc. 109) is MOOT.

**DONE and ORDERED** this 26th day of February, 2024.

/s/ JEFFREY U. BEAVERSTOCK<br>
CHIEF UNITED STATES DISTRICT JUDGE